UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| ANNALEE P., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 1:23-cv-00024 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Annalee P.[1] filed this action for judicial review[2] of the Commissioner of the Social Security Administration's decision denying her application for disability insurance benefits under Title II[3] of the Social Security Act. The Administrative Law Judge ("ALJ") issued an unfavorable decision, finding Ms. P. did not qualify as disabled.[4] Ms. P. challenges the decision, arguing the ALJ erred in his supportability and consistency analysis of a medical provider's opinions, failed to adequately consider Ms. P.'s subjective complaints of pain, and erred in failing to find chronic fatigue syndrome was a medically determinable impairment.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 3; Opening Br., Doc. No. 10.)

[3] 42 U.S.C. §§ 401–434.

[4] (Certified Tr. of Admin. R. ("Tr.") 17–31, Doc. No. 9.)

[5] (Opening Br. 1, Doc. No. 10.)

1

The court[6] has carefully reviewed the record and the parties' briefs.[7] Because the ALJ legally erred by discounting a medical provider's opinions based on a rescinded agency standard, the court is unable to effectively review his analysis. Accordingly, the Commissioner's decision is reversed and the case is remanded for further administrative proceedings.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine whether substantial evidence supports the ALJ's factual findings and the ALJ applied the correct legal standards.[8] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[9]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[10] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind

---

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 8.)

[7] The appeal is determined on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[8] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

might accept as adequate to support a conclusion."[12] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[13] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[14]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[15] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[16]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[12] *Id.* (internal quotation marks omitted).

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 423(d)(1)(A).

[16] *Id.* § 423(d)(2)(A).

    5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[17]

The claimant has the burden, in the first four steps, of establishing disability.[18] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[19]

## PROCEDURAL HISTORY

In October 2020, Ms. P. applied for disability insurance benefits, alleging disability beginning February 2020.[20] After an administrative hearing,[21] the ALJ issued a decision on May 3, 2022, finding Ms. P. not disabled.[22] At step two of the sequential evaluation, the ALJ found Ms. P. had the severe impairments of obesity, degenerative disc disease of the thoracic and lumbar spine, bipolar disorder, panic disorder, and attention deficit hyperactivity disorder.[23] At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[24]

---

[17] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[18] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *Id.*

[20] (Tr. 188–89.)

[21] (*See* Tr. 37–57.)

[22] (Tr. 17–31.)

[23] (Tr. 19.)

[24] (Tr. 20.)

The ALJ found Ms. P. had the residual functional capacity ("RFC")[25] to perform medium work, with additional exertional and functional limitations, including limitations that she only occasionally climb and she avoid concentrated exposure to hazards.[26] Additionally, the ALJ limited Ms. P. to "simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, and few workplace changes."[27] Based on this RFC, the ALJ found Ms. P. unable to perform her past relevant work.[28] But after considering the testimony of a vocational expert, the ALJ found Ms. P. capable of performing other jobs existing in significant numbers in the national economy.[29] Therefore, the ALJ found Ms. P. not disabled.[30]

The Appeals Council denied Ms. P.'s request for review,[31] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. P. raises three claims of error. She argues the ALJ erred in his supportability and consistency analysis of the medical opinions of Jared Hultquist, failed to adequately address Ms.

---

[25] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1 (July 2, 1996). In assessing RFC, the ALJ considers all medically determinable impairments and all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1545(a)(2)–(3).

[26] (Tr. 22.)

[27] (*Id.*)

[28] (Tr. 29.)

[29] (Tr. 30.)

[30] (Tr. 31.)

[31] (Tr. 1–7, 14–36.)

5

P.'s subjective claims of pain, and erroneously failed to find Ms. P.'s alleged chronic fatigue syndrome qualified as a medically determinable impairment.[32] In response, the Commissioner argues the ALJ properly considered the opinions at issue, Ms. P.'s subjective symptoms, and her claims of chronic fatigue syndrome.[33] According to the Commissioner, Ms. P. is essentially asking the court to reweigh the evidence, which is disallowed.[34]

First and foremost, Ms. P. challenges the ALJ's analysis of the opinions of Jared Hultquist, PT, DPT.[35] Specifically, she contends the ALJ improperly rejected Mr. Hultquist's opinion based on rescinded agency standards.[36] She also argues the ALJ failed to assess the consistency and supportability of Mr. Hultquist's opinions, as required.[37] A review of the record and the ALJ's decision supports these arguments. In this case, the ALJ failed to properly analyze the supportability of Mr. Hultquist's opinions, and legally erred by finding his opinions unpersuasive because he was "not an acceptable medical source."[38] Where the Commissioner's decision must be reversed on these grounds, it is unnecessary to address Ms. P.'s other claims of error.

An ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings based on the following factors: (1) supportability (the extent to which the

---

[32] (Opening Br. 1, Doc. No. 10.)

[33] (*See generally* Answer Br. 10–25, Doc. No. 16.)

[34] (*Id.* at 10.)

[35] (Opening Br. 14–19, Doc. No. 10.)

[36] (*Id.* at 15–16.)

[37] (*Id.* at 17–19.)

[38] (Tr. 27.)

6

opinion is supported by underlying medical evidence and explanations); (2) the consistency of the opinion with other sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[39] The most important factors are supportability and consistency, and the ALJ is required to explain how she evaluated those two factors.[40] Before these standards were adopted, the previous regulations called for greater deference to be given to the opinions of an "acceptable medical source," while opinions from providers who did not qualify as acceptable sources were discounted.[41]

In January 2022, Mr. Hultquist filled out a form containing opinions as to Ms. P.'s functional abilities.[42] Among other things, he noted Ms. P. had diagnoses of lumbar spondylosis with radiculopathy, muscle weakness, and a right rotator cuff tear.[43] He opined Ms. P. could lift less than ten pounds; only stand or walk for twenty minutes at a time for a total of one hour during an eight-hour day; and only sit for forty-five minutes at a time for a total of seven hours in an eight-hour day.[44] Mr. Hultquist also opined Ms. P. would need to recline throughout the day and take unscheduled breaks, and would likely be absent from work more than four times per

---

[39] 20 C.F.R. § 404.1520c(b), (c)(1)–(5).

[40] *Id.* § 404.1520c(b)(2).

[41] *See* 20 C.F.R. § 404.1527; SSR 06-03p, 2006 SSR LEXIS 5 (Aug. 9, 2006).

[42] (Tr. 674–76.)

[43] (Tr. 674.)

[44] (Tr. 674–76.)

7

month.[45] Mr. Hultquist submitted a separate letter containing similar information and opinions.[46] The ALJ found these opinions unpersuasive, noting:

> this physical therapist is not an acceptable medical source and he based his statement at least in part on the claimant's subjective complaints regarding her impairments and non-medically determinable impairments. Further, evidence of record is more consistent with a finding that the claimant has the physical residual functional capacity for medium work with additional postural and environmental limitations as noted above.[47]

Ms. P. argues this analysis is flawed. She asserts the ALJ erroneously relied on old agency standards to reject Mr. Hultquist's opinions, since new agency regulations eliminated the analysis of acceptable and unacceptable sources.[48] But the Commissioner argues the use the phrase "acceptable medical source" does not mean the ALJ erred. He contends the ALJ used that phrase in the context of finding Mr. Hultquist's opinions unsupported "because he based them on impairments that were not 'medically determinable'—i.e., the diagnoses *Mr. Hultquist* provided to Plaintiff—and because he is an unacceptable medical source, he was not qualified under agency regulation to establish them."[49] This argument fails because it is too attenuated, and there is no indication in the ALJ's decision that this was his rationale.

---

[45] (Tr. 674–675.)

[46] (*See* Tr. 569.)

[47] (Tr. 27 (internal citations omitted).)

[48] (Opening Br. 15–16, Doc. No. 10.)

[49] (Answer Br. 13, Doc. No. 16.) The Commissioner rests this argument on still-existing regulations indicating that for an impairment to be medically determinable, it must be established by an acceptable medical source using medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1521. Physical therapists are not considered acceptable medical sources for this purpose. *See* 20 C.F.R §§ 404.1502(a), 404.1521.

8

To accept the Commissioner's argument, the ALJ's statement that Mr. Hultquist was "not an acceptable medical source and he based his statement at least in part on . . . non-medically determinable impairments"[50] would have to be interpreted as including the following premises:

- by calling Mr. Hultquist an unacceptable medical source, the ALJ meant Mr. Hultquist, as a physical therapist, was unqualified to provide objective medical evidence to establish a medically determinable impairment under 20 C.F.R. § 404.1502(a) and § 404.1521;

- Mr. Hultquist himself diagnosed impairments (as opposed to simply reciting diagnoses by other medical professionals) which would have been medically determinable only if acceptable medical sources diagnosed them; and

- because Mr. Hultquist based his opinions on impairments he was unqualified to diagnose, he was an unacceptable medical source, and his opinions were unsupported for purposes of the ALJ's RFC analysis (as opposed to the analysis at step two).

While this is a creative way to frame the ALJ's words, it stretches a plain reading of his statement past the breaking point.[51] This singular statement from the ALJ cannot fairly be read as a deep dive into the legal standards governing the establishment of medically determinable impairments. Rather, a plain reading supports Ms. P.'s claim that the ALJ applied rescinded

---

[50] (Tr. 27.)

[51] The Commissioner's argument also rests on the assumption that the ALJ's statement should be read as: "this physical therapist is not an acceptable medical source and he based his statement at least in part on . . . non-medically determinable impairments." (*Id.*) But "non-medically determinable impairments" could also reasonably apply to Ms. P.'s complaints, as in: "this physical therapist is not an acceptable medical source and he based his statement at least in part on the claimant's subjective complaints regarding her impairments and [the claimant's subjective complaints regarding her] non-medically determinable impairments."

9

standards, discounting Mr. Hultquist's opinions on the grounds that he was an unacceptable medical source. In doing so, the ALJ legally erred.[52]

The ALJ's reference to a rescinded standard may be less damaging if he had also addressed the governing standards. But the ALJ's supportability analysis of Mr. Hultquist's opinions is entirely lacking. To assess supportability, ALJs examine how well medical sources support their own opinions with "objective medical evidence and supporting explanations."[53] But the ALJ here only noted Mr. Hultquist based his statements "at least in part" on Ms. P.'s "subjective complaints regarding her impairments and non-medically determinable impairments."[54] This is not a supportability analysis. To the extent this phrase reflects the ALJ's attempt to analyze supportability, the analysis is inadequate, similar to *Beaumont v. Kijakazi*.[55]

In *Beaumont*, the court reversed the Commissioner's decision where the ALJ failed to properly evaluate the supportability of a medical opinion.[56] The court concluded the ALJ "erroneously stated that [a doctor's] opinion was based on the claimant's subjective statements rather than the actual physical examination."[57] In reality, the doctor had completed a physical

---

[52] *Cf. R.J.P.A. v. Kijakazi*, No. 21-cv-2009, 2022 U.S. Dist. LEXIS 168041, at *14 (D. Colo. Sept. 16, 2022) (unpublished) (finding ALJ erroneously applied rescinded regulations in finding an occupational therapist was not an acceptable medical source).

[53] 20 C.F.R. § 404.1520c(c)(1).

[54] (Tr. 27.)

[55] No. CIV-20-87, 2021 U.S. Dist. LEXIS 180979, at *9–11 (E.D. Okla. Aug. 31, 2021) (unpublished), *R&R adopted*, 2021 U.S. Dist. LEXIS 180009 (E.D. Okla. Sept. 20, 2021) (unpublished).

[56] *Id.* at *11.

[57] *Id.* at *9.

10

examination and made specific findings as to the claimant's limited range of motion.[58] Similar to *Beaumont*, the ALJ in this case made no reference to Mr. Hultquist's actual clinical records or findings, instead noting only Mr. Hultquist's partial reliance on Ms. P.'s subjective symptoms and non-medically determinable impairments.[59] But this ignores Mr. Hultquist's numerous assessments and findings regarding Ms. P.'s limited strength and range of motion.[60] The ALJ failed to provide the minimum level of articulation necessary for a proper supportability analysis. ALJs must provide explanations sufficient to permit reviewing courts to follow their reasoning regarding supportability for each medical opinion.[61] The ALJ's failure properly assess the supportability of Mr. Hultquist's opinions prevents this review.

To be sure, there appear to be legitimate reasons to question the supportability of Mr. Hultquist's opinions. For instance, when stating his opinions as to Ms. P.'s limitations, Mr. Hultquist noted she had a diagnosis of lumbar spondylosis with radiculopathy,[62] where Mr. Hultquist's own records note Ms. P. had a diagnosis of spondylosis *without* radiculopathy.[63] But the ALJ did not address this. Similarly, Mr. Hultquist noted Ms. P. had a diagnosis of a rotator

---

[58] *Id.*

[59] (Tr. 27.)

[60] (*See, e.g.*, Tr. 438–46, 449–53, 570–93.)

[61] *See Jefferson L. v. Kijakazi*, No. 2:20-cv-00740, 2022 U.S. Dist. LEXIS 43396, at *6–8 (D. Utah Mar. 10, 2022) (unpublished); 20 C.F.R. § 404.1520c(b)(2).

[62] (Tr. 674.)

[63] (*See* Tr. 443.) Other records note no radiculopathy as well. (*See, e.g.*, Tr. 576 (noting spondylosis "without myelopathy or radiculopathy"), Tr. 625 (same).)

cuff tear.[64] However, records show only that a rotator cuff injury was suspected;[65] the record contains no medical imaging establishing the existence of a tear. But again, the ALJ did address this. And the court cannot assess factors like supportability—or weigh record evidence—in the first instance.[66] To do so would be to overstep.

Regardless of the existence of other evidence in the record supporting the ALJ's non-disability decision, the ALJ's legal error cannot be considered harmless. When an ALJ erroneously discounts or rejects a medical opinion, the error can only be considered harmless "if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."[67] Mr. Hultquist was the only medical provider who offered such a restrictive opinion regarding Ms. P.'s functional limitations, including significant limitations on her ability to sit and stand. The limitations assessed by Mr. Hultquist, if credited by the ALJ, could substantially affect the ALJ's determination of Ms. P.'s residual functional capacity. And it would be improper to speculate how the ALJ would have articulated his findings had he used the correct legal standards.[68] The ALJ must conduct that analysis in the first instance.

---

[64] (Tr. 674.)

[65] (*See* Tr. 584 (nothing Ms. P. exhibited signs and symptoms "of possible R rotator cuff strain with pain").)

[66] *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting post hoc rationalization would require the court to "overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process"); *cf. Langley*, 373 F.3d at 1118.

[67] *Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014).

[68] *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision.").

## CONCLUSION

Where the ALJ erroneously discounted a medical provider's opinions using a rescinded agency standard and failed to analyze the supportability of the opinions, he legally erred. Because it would be improper for the court to conduct the analysis under the correct standards in the first instance, the Commissioner's decision is reversed and the case is remanded for further administrative proceedings.

DATED this 22nd day of January, 2024.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge